Good morning, your honors. Jessica Hunter for the appellant, Wynton Bell. Good morning. My name is Michelle Lavin. I'm an assistant state's attorney representing the people of the state of Illinois today. Okay, great. Again, your honors, Jessica Hunter for Wynton Bell. May I reserve two minutes for rebuttal? Thank you. Your honors, the charges in this case arose from an incident involving a group of kids in, incidentally, my childhood neighborhood of Beverly on the south side of Chicago in February of 2008. The state's case was presented through the testimony of three teenage complainants. These young men testified that Bell, my client and his friend who were unarmed, approached them and 15 to 20 of their mostly male friends as they were hanging out on a street corner and attempted to rob them. According to these boys, Bell punched one of the boys in this group when he resisted being robbed. By the close of the evidence, the judge acquitted Bell of six of the seven charges, finding that the complainant's account was, quote, absurd. This is not your typical reasonable doubt case. In acquitting Bell of six of these charges, the judge said, well, essentially lamented ASA Sexton's decision to prosecute this case, saying, quote, one would hope rational people in a free society would be thinking more clearly before they bring charges that aren't substantiated by any reasonable evaluation of the evidence. Despite this, and despite his finding that the complainants falsely accused Bell of attempting to rob them, the judge nonetheless convicted Bell of aggravated battery on a public way. Your Honors, because the evidence in this case did not prove that Bell punched one of the complainants by the name of James Bennett, beyond a reasonable doubt, his battery conviction should be reversed. I think the most important fact in this case is that the evidence the state presented as proof of the battery charge was the testimony of the young men who were unarmed. The testimony of these three complainants, whose account the judge determined to be totally unworthy of belief. These complainants testified that Bell and his friend purportedly got out of a car which they were driving with their girlfriends, and suddenly accosted the complainants and their friends, a group of 15 to 20 other teenagers, as they were hanging out on the corner minding their own business. And they provided a pretty incredible explanation for these events. They said essentially that Bell and his friend, both of whom were also teenagers, both of whom also lived in Beverly, intended to rob them, and attempted to do so by demanding their money and sticking their hands in the pockets of six or seven of these boys that were on the corner. It was during this robbery, or purported robbery, that Bell punched one of the boys in the face when he swatted Bell's hand away from his pocket. The complainant's testimony was actually even more remarkable in the sense that they claimed that Bell planned the robbery by, before approaching with his friend after exiting this car where their girlfriends were sitting, he actually scoped them out about five minutes earlier by his lonesome about 15 feet away from them while talking on the cell phone, only to disappear and then return with only another single unarmed male in order to ostensibly perpetrate this robbery. Now, it's incredible, and the judge thought it was incredible, because the judge rejected this entire account as absurd. Absurd that Bell and his friends would frisk and search the pockets of seven or eight of the young men in this group, but take none of their wallets and cell phones, which they said that they had on their possession. And contrary to human experience, that Bell and one friend, who was, they were unarmed and grossly outnumbered, as the judge recognized, would try to provoke a conflict of interest. And yet, despite his wholesale rejection of the complainant's account, the judge nonetheless convicted Bell of aggravated battery in a public way. The judge found that there was obviously some sort of confrontation between these two groups of boys, and that, quote, it was likely absurd that no one was struck. This was the judge's finding on the aggravated battery conviction that we are appealing today. However, it's our position that given that the judge essentially found that the complainants falsely accused Bell and his friend of attempting to rob them, it's unreasonable for the judge to accept as true the complainants claimed that Bell punched one of them when he resisted this, what the judge found to be a fictitious robbery. At least not without some other credible, reliable, or independent corroboration of this phantom punch. And yet, there really is no corroboration. You know, Bell did not confess. The state's witness, Officer Sotak, testified that when Bell was questioned at the police station and did make some statements, although did not actually make a full formal statement, that he told the same story he did at trial, which is that some white kids had thrown some snowballs at his friend's car, at which point he and his other friend stepped out of the car and had some words with them, essentially scolded them or tried to embarrass them. For throwing snowballs and then not owning up to it. There's no photos of the bruise that James Bennett alleged that he received. Officer Clancy, who responded to the scene about 15 to 20 minutes later, this coroner at 107th and Hoyne, he did not report any injury in his police report. I mean, despite the fact that mention of an injury would be a material fact in a battery case or bodily harm. Counsel, didn't he testify at trial, though, that he observed redness on the victim's face? He did. In the area where the punch was received? He did. You know, that is it. That's all the corroboration we have. The thinnest possible corroboration, because he did testify. Well, therefore, we have a second witness who testified he observed it as well. That's further corroboration, isn't it? Is Your Honor talking about one of the other complainants? Well, he's one of the witnesses. Yes. Yes. I mean, just as a point of clarification, yes, he is one of the witnesses. He's one of the witnesses that the judge found to be incredible. James Bennett, Tim O'Brien, and Brian Borsey, they all proffered the same account. The account that the judge found to be totally unworthy of belief. So what we are arguing and what this Court has found. Before we move off of Officer Clancy, didn't Mr. Bennett testify that he told Officer Clancy what happened? He did. And did Officer Clancy document that Bennett said he had been struck? Yes. And actually, that's actually a very important point. My question is, did Officer Clancy document that Bennett said he, Bennett, had been struck? Yes. In his police report. And in fact, actually what he documented is that Bennett told him he had been struck and that the punch that Bell allegedly threw with his closed fist was so powerful that it knocked him to the ground. That's what Officer Clancy included in his police report. Officer Clancy is the arriving, the first responder. Yes. Yes. And yet, despite including that the alleged victim was struck so ferociously that he was knocked to the ground, no mention of this injury that at trial he says he saw redness. You know, you would think that this would be a material fact. I mean, redness, quite frankly, staying outside in February in Chicago for over an hour at night, redness could be caused simply by the elements. Exactly. Ms. Hunter, I don't think Officer Clancy ever wrote that Bennett told him he was struck. He didn't write that. The knocking to the ground occurred by the tactical officer when he was at Mr. Bennett's home in the presence of Mr. Bennett's mom. You're absolutely right. Officer Corbis, yes. An hour ago on February 8th, I walked and sat down. Right. Mr. Bennett said to February 12th in the presence of his mother, I was knocked down. You are absolutely correct. Yes. And I apologize. You're right. At the scene where Officer Clancy responded, he did not, he, Bennett, supposedly they spoke, of course. The first time, as I recall, that Officer Clancy ever mentioned injury was at trial. Exactly. When he said, I think I remember observing redness, which, as you point out, may be caused by anything. Right. And I think it's important that Bennett said he received, he said slight, but he said he received a bruise. He said that the punch, depending on what version you believe, the punch either knocked him to the ground or it was so forceful that after he was punched, he walked across the street and sat on the curb and retired. But in any case, he received a bruise. And yet, despite the, I think, remarkably meticulous investigation of this case, there is no documentation of this bruise. I mean, four officers, including a sergeant, came less than two days later, which Justice Sloan is referring to, two days later to Bennett's house to show him a photo array, and yet no photograph of this bruise. I mean, these are, and I think, incidentally, it's important to acknowledge that Bennett's father was a sergeant in the CPD. This is a group of alleged victims that knows the importance. How do we know that? It's in the record. What possible value is notating the fact that this, Bennett's father is a police officer? What value does that have? Me personally, or from the defense's, the defense counsel's point of view? The defense point of view, prosecution's point of view, what evidentiary value does that have? Well, I think the value is that it goes to show bias. You know, there is, and the judge allowed, there was questioning, the ASA Sexton objected to this as irrelevant, and the judge ruled that, no, this goes to show bias. Whether these officers, for instance, are not including facts in the report and then later on corroborating in the barest possible way the testimony of one of their colleagues or their cohort's sons who's alleging battery, yes, it certainly goes to show bias. And I think that would be a totally legitimate explanation as to why the redness as the only corroboration we have, it crops up for the first time at trial. You know, but that's not the kind of quality corroborative evidence we need in this case, because given the judge's finding that these complaints were totally incredible, I mean, although he didn't recognize it as such, the judge's... Totally incredible, or did he rather indicate that there were some things he believed and some things he didn't as it relates to each and every witness? You know, I don't think it's a wash. I mean, although he didn't recognize it as such, most of the judge's findings favored Bell's account, which is that, you know, the judge found that Bell and his associates were on their merry way going about their business. Now, that is a rejection of the complainant's testimony that Bell scoped them out five minutes before this conversation, or the confrontation. It's a rejection of the idea that they were standing there on the corner and then were suddenly accosted. The judge found that, you know, he said, although it doesn't really matter to me, it's more likely than not that someone in this complainant's group were throwing snowballs. It should matter to him. Bell testified that that's what happened, that he was driving by with his friend and their girlfriends, and the kids threw snowballs. Of course it matters. It's another instance in which the judge is finding that the defendant's version is more true than the complainant's. The complainant said, no snowballs. Twenty kids hanging out in the street on the south side of Chicago on a February night, and the complainant said no one was throwing snowballs. They were waiting for a friend for 20, 30 minutes. It's simply unbelievable, and the judge found it was unbelievable. And I think it's interesting when the judge … Does this red Cadillac swerving toward the group, what do you make of that? It's very confusing. I mean, that's the state's evidence on that point. They didn't seem to make much of it as part of their overall theory. I mean, they did have a rebuttal witness who testified, Niecy Evans, who testified that the defendant owned a red Cadillac, but with respect to the complainant's account of what happened, it didn't seem to present a coherent theory with respect to the red Cadillac. So I don't make much of it, actually, at all. What the judge found, and I think it's interesting with respect to the punch, because that is the one charge that the judge entered a guilty verdict on. I mean, it's likely absurd no one was struck. Are these words of someone who has an abiding conviction that Bell struck Bennett across the face beyond a reasonable doubt? I mean, I think what the judge found is that something happened here. Something must have happened. How did this case get in front of my courtroom? But this is conjecture, the idea that there was obviously a confrontation, which the judge believed was instigated by the complainants, and yet someone must have been struck. You know, the Supreme Court has found that the idea that the defendant is probably guilty does not suffice. I think it's interesting the judge provides no reason, points to no evidence for why he thinks it's likely someone was struck. And in essence, we argue this is a compromised verdict, and it does not comport with the presumption of innocence. It's also, I think, although it's collateral, the record on the whole, if you read it, it expresses the judge's dissatisfaction with the state's evidence. The judge laments the prosecutor's decision to charge the case in its finding of guilt. At the motion for new trial, although the judge doesn't seem to recall accurately what his findings were, again, he says that this was not a case that he thinks should have been brought, or that perhaps could have been handled differently. I mean, before sentencing, he encourages Bell to seek a pardon from the president of the United States or the governor. This is an instance in which the judge, although he entered a finding of guilt, I think it's really clear the record on the whole, and in particular his findings at the end and the close of the evidence, don't support the verdict in this case. And we would ask this court to reverse and vacate Witten-Bell's aggravated battery conviction, which I would note is his only criminal offense. Thank you, Your Honor. Thank you. But the police said he was in a gang. Where does that come from? I don't recall. I mean, there was some suggestion by A.S.A. Sexton at sentencing that he was in a gang, but he – Is it in his pre-sentence investigation? It's in the pre-sentence report. Yeah. Is there any – But he denied it. He denied it. But is there any objective evidence that – are there any tattoos? No. I mean, not that I – there was no evidence presented of his gang affiliation. In his juvenile background, is there any accusation of gang involvement? Not that I'm aware of, no. I mean, the state – and the state certainly – I think the state's made a suggestion of it at sentencing. It didn't follow through with it. I mean, this is a young kid, grew up in Beverly, went to Morgan Park High School, has a young daughter, worked his whole life, and no criminal convictions that we know of. You know, and this is a case I think that got out of control. And there's a suggestion here that it is because, you know, of the fact that the complainants had access, easier access, to get this ball rolling, and that the ball kept rolling, and that the judge recognized this. And this is an instance in which this Court, I think, can rectify that. Well, what's the motivation then? What is the motivation for this victim and his witnesses to testify the way they did and to pursue this the way it was pursued? Why in the world would they do that? You know, I've given that a lot of thought because that's, of course, I think, a really intuitive question. And quite honestly, I mean, I wouldn't be surprised, and I don't think this Court should be surprised, that these 15-year-old kids who at least are dumb enough to be saying the street corner and throwing snowballs at drivers are also dumb enough – Wasn't it referred to as our corner? Mr. Bennett referred to it as our corner. Not that I recall, but it's – I mean, not that I recall from the evidence, although it's possible. I mean, they were holding court, for sure. You know, I mean, this is – Okay. But that, you know, they would – that something happened here, and it's certainly not clear what, as the judge said. And the police were called, and the witnesses told their story. And did they know they would be sitting in a courtroom later and having to falsely accuse someone of attempted robbery? No. I don't think at the time. But these are teenage boys. I think the case – and I think the matter snowballed, to forgive the pun, you know, and then they couldn't back out. There was nowhere to go. You know, perhaps – maybe they felt trapped. And they certainly – although James Bennett, the one that was allegedly punched, said he never spoke to his friends about it. I mean, of course he was impeached. He was impeached by his own friends who said – Where one of the parties who is quoted as calling this our corner is punked. Someone gets out the car and dares you to repeat that act. Is that – That's what reasonable people – I believe, and that's what the judge concluded. Yeah. And that, you know, there was sort of a showdown here. This was a display of machismo. And, you know, her egos, I don't know. And it's a – there's a lot of different high schools, but the bottom line is the city has – this is not a case in which we can say, well, something happened here. So someone's going to have to be held responsible. This is an instance in which the defendant must be proven beyond a reasonable doubt that this happened. And where you have this incredible, outrageous testimony of these complaints, which the judge recognized, something more is required, and we didn't have it in that case. Thank you, Your Honors. Thank you. Thank you. May it please the Court. The only question in this case on appeal is whether, after viewing the evidence in the light most favorable to the prosecution and giving deference to the trial court's findings, any rational trier of fact could have found this defendant guilty. If you look at the evidence the way you're supposed to on appeal, in the light most favorable to the prosecution, and give deference to the trial court's finding, the answer to that question is yes, any rational trier of fact could have found him guilty. The people presented testimony from three occurrence witnesses, three eyewitnesses, described the events that occurred that evening on February 8th, 2008, at 107th and Hoyne. Two of the witnesses, the victim and another eyewitness, saw what happened, identified the defendant as the person, the man who punched James Bennett. The third eyewitness candidly stated he saw something like a swing, he wasn't even sure if he saw a swing, and he certainly didn't try and identify anyone. But that testimony is corroborated by Officer Clancy. Regardless of whether he put it in his report or not, he did testify that he viewed an injury. And when he asked if he viewed an injury, he said, I saw a redness. But he said he saw it, not just a red face from the cold weather, right on the lower right portion of the victim's face. Did he say that? Yes, he did. He did on page 165 to 166U. Okay. The trial court considered all this evidence. It considered, while it rejected the evidence of the attempt robbery, it did not outright reject these witnesses' testimony. It rejected portions of it. And the law states that's perfectly allowable. The trial court is in a better position to view the evidence. They view the witnesses' testifying. They hear it. They can see the witnesses' demeanor. They are in a better, a trial court is in a better position to determine whether a witness is lying or not lying or telling the truth or in which part of that testimony. And this trial court very carefully considered all the evidence. Did he call the witnesses essentially liars, the trial court? He did not believe them about the, he said it was absurd about the attempt robbery. He did not. So there's a point at which we begin to believe liars. Well, I think what he was saying is I don't believe that's how it happened. And I think maybe he thought that the victims maybe didn't want to say they were throwing snowballs. But that doesn't mean he didn't believe the occurrence. It doesn't mean that the victim wasn't punched. Defendant's own testimony, he says, I was there. I started an altercation with these victims. He says that he stayed, when he got out of Niecy Evans' car, he says he stayed within one to two feet of the car. But his friend, Niecy Evans, who was driving that car, says no, that's not what happened. She said that she watched Defendant and Sean Strickland walk from her car, which was parked two houses from the corner. She saw them walk to the corner. When they got to the corner, she turned the car around and went and picked them up. So that was Defendant's way of saying I couldn't have punched him, I wasn't close, but he was. And in addition, for some reason, Defendant decided to leave out the portion about the red Cadillac. The victims testified about a red Cadillac. Evans testified that when the snowballs were thrown, Defendant was in the red Cadillac, his red Cadillac, not her car, as he testified. And in fact, they both cars pulled over and Defendant gets out of his car, parks his car, leaves it, gets into her car, and then he and Strickland decide to go confront these boys. But in the meantime, Evans' car is parked such that the victims see the Defendant coming out of this black Pontiac, not his car. Well, where was this car? You say the victim. I take it you mean Mr. Bennett? Yes, I do. And where, according to Mr. Bennett? I don't want to put words in your mouth. Is that who you're talking about? Well, I think at least, I don't recall about Tim O'Brien, but Sean Borstein and James Bennett both, I believe, saw him get out of the black Pontiac. They did? But where does Mr. Bennett say the car was located when he observed the two exit the car? I don't recall where he said it was exactly. Near the intersection. I'll help you. It was near the intersection. Okay. Where did Mr. Borstein say the car was? I'll look for you.  I'm not seeing right now where. I don't know if I see where Mr. Borstein said. Oh, I can tell you. Ask Mr. Borstein. I can tell you. It's at page 74, U74. Okay. Do you have it? I don't have that in my notes, and I don't have the record with me. Mr. Borstein said it was 150 feet away from the intersection. Okay. I don't dispute that, but he wasn't right by the car. Did they get out of this car twice? Or did they witness the same exit? They, I mean, Bennett and Borstein. They only witnessed the exit from the black Pontiac. That's what they said. One time. Yes. So Mr. Bennett observes them exit the car as it's in the middle of the speed intersection.  Well, at the intersection, you know, if you said at the intersection, I can't explain that. I can only explain Niecy Evans, who is the defendant's friend, who has no reason to say why she did that. But the question of guilt or innocence is the state's obligation. So you're going to prove the defendant guilty based on what Ms. Evans said? No, absolutely not. Okay. But, Your Honor, the fact that these witnesses may have seen the car a little bit closer or further apart does not mean that they're lying about that. It does not mean you can't believe them because they don't have the same distance. In fact, when one of the witnesses was asked about the number of feet, I think it might have been Evans, couldn't tell you the number of feet, so she estimated by the number of houses. Counsel, if I ask you to describe what the young lady is wearing in the first row in the left-hand end of the first row, and I ask one of my colleagues, the description should be the same. We agree? It should be, except, Your Honor, I would say this is not a point that's necessary. It's a collateral point. It's an issue that doesn't affect his guilt or innocence. Well, I think credibility is always. It is part of the credibility. Excuse me. But I think you have to also understand that there. Counsel, the distance that the defendant was from the victim is not collateral. No, no, no. It's whether or not he was arm's length away or 150 feet away. No, that's not what I meant. I apologize. That is not at all what I'm saying. What I'm saying is the distance from the car. And I say that only because as long as the defendant was not staying within one to two feet, which really, it doesn't, it was clearly his way of saying, look, I didn't do this. I stayed within one to two feet. The fact that he, and he's contrived this whole thing. He completely omitted saying anything about his red Cadillac. I think he's trying to portray himself, as probably most witnesses do, in a way that most fear themselves. Most witnesses? You're right. But he's leaving out a significant portion here. And I think the fact that Evans, I think his testimony can't be believed. Because I think when you have someone, Evans, who is, if anything, not a state witness. Is it really the defendant's testimony? About how far he was away? That we base our finding of guilt or innocence on? No, Your Honor. But we have eyewitnesses who saw the defendant punch the victim. Excuse me, counsel. These are the same witnesses that Judge Claps did not believe when they said that the defendant also robbed them. Or attempted to rob them. About the attempt robbery. But you have to understand, what he said was, I don't believe them about the attempt robbery because nothing was taken. He was not saying I don't believe anything occurred. It didn't make any sense for two unarmed 17-year-olds to approach a group of 15 to 20 young men on the same corner. They're all teenagers. And he said it just didn't make any sense. For no reason it didn't make any sense. It didn't make any sense to do that for no reason. He said then he believed that something caused this confrontation. Whether it be the snowballs or a gesture, he believed something occurred. Well, earlier you made a point out of how the defendant started this confrontation. Wouldn't the judge's surmise that it was snowballs or gestures put the start of this confrontation on the young group of 15 to 20 young men who were standing on the corner, claiming that corner? Wouldn't that be the start of the confrontation? If you're driving down the street on your merry way, not doing anything to anybody, and somebody makes a gesture, which we have no testimony about, or throws snowballs, which we do have testimony about, isn't that the actual start of the confrontation? Aren't they the ones that are provoking the confrontation? According to the defendant, yes. According to the defendant, the snowballs provoked the confrontation. And the defense witnesses, the snowballs. Yes. All right. And on the whole, didn't the judge believe them more than the victim's witnesses whom he discredited? He did not believe more. He believed different portions, not more. Did not believe more. He believed different portions. The court found, said it was likely absurd that the defendant did not strike anyone. And I don't think you can discount the fact that the trial court, at the end of his ruling, stated the elements of the crime in this particular instance and said all of those elements were proven beyond a reasonable doubt. He wasn't making that finding without any basis. He was saying, I believe defendant hit this victim. I don't know why it started exactly, but it's clear to me that it did. In fact, counsel, you know, I want to point out defense counsel embraces the judge's language, and some of the language may have been inartful in his findings, when he says the defense argues no one was struck, likely that is absurd. But then he goes on in the very next sentence to say the only prudent thing that happened here is when Mr. Bennett was struck, neither Bennett nor anyone in that group retaliated thankfully. So he affirmatively reflects his conclusion that Mr. Bennett was struck. Wouldn't that be a fair assessment? That's a good point, Your Honor. If you take the court's rulings as a whole and you read them completely, not taken out of context, yes. What he was saying is he believed the defendant struck the victim. Did he also say he believed the state's witness is a lie? He didn't say it that way. He said I don't believe that happened. So he wasn't necessarily calling them liars, like I don't believe anything that they were saying. What he was saying is I don't believe that particular portion of your testimony, and that is very frequently occurs when a witness lies about one thing but tells the truth about another. And the trier fact is the one who is supposed to make that determination. We can't. Go on, I'm sorry. We don't see the witnesses. If a witness, and not that this was the case here because I wouldn't know, but if a witness is slow and is testifying at trial, you may not see that on the record, but the judge sees it. Before we move on and getting back to my colleague's point about no one responding, no one in Mr. Bennett's group responding, let me ask you, is it reasonable to believe that 15 to 20 young people would stand around while one of their group is being struck or frisked? Is it reasonable to believe that? I think it is reasonable because the defendant and Sean Strickland were bigger, older. Two years older. Two years older? One or two years older than some of the group, depending on who you talk to, and actually about the same size. Same weight. Well, but also taller. And I think, you know, you can say that a year, two years, but at that particular age it's the difference between muscles being four. Counsel, it's seven to one. Your Honor, I just don't think it's necessary that you have to assume that the victims are going to be going after someone just because they punched someone. Is it reasonable to believe that two unarmed 17-year-olds would approach a group of 15 to 20, perhaps 15-year-olds? Yes, Your Honor, in certain circumstances it absolutely is. And in fact, this is a particular group. Have you ever worked in a felony courtroom? I have not, Your Honor. Okay. But in this case. Counsel, before you run out of time, I want to ask you to just finish up, when you finish up, by telling us specifically how you think the State proved that this aggravated battery happened beyond a reasonable doubt. I'd just like to hear the State recap that. The State proved that by eyewitness testimony. I would like specifics. Which eyewitness testimony? The victim testified. And the victim that was found incredible on other points? On another point, on a completely different point. But that does not mean the court clearly found that he was credible on that particular issue. The victim who says he told Officer Clancy that he was struck, though Officer Clancy does not memorialize that. But he testified to it. The victim who says, who according to the tactical officer who went to the victim's home and wrote that the victim said he was knocked to the street. The victim who has been proven to have a different version of the same event. Your Honor, I can't explain why one person might have thought he said, or why he would have said I was knocked to the street and now made it not so bad. Because mom was there. I just sat down. Because mom was there. Why would that change? I don't know why he would change it. It would seem to me he'd want to make it worse so that it would seem like this was a terrible thing that happened to him, as opposed to playing it down. In the presence of his mother, he says he was knocked to the street. According to the officer, not according to James Bennett. Okay. He denies that. Okay. I interrupted. Justice Paczynski asked. I'm sorry. You wanted me to address? Okay. This whole case revolves around whether or not the state proved this defendant was guilty beyond a reasonable doubt. And I would like you to just end by recapping specifically, point by point, how the state proved that. I'll repeat. Three eyewitness testimony in corroboration by an officer who said, well, it wasn't in his report. He said, I saw the injury. And he did say that Bennett told him. Did he call it injury? Did he call it injury? The question was asked, did you see an injury? And he said, I saw redness to the lower bottom portion of the victim's face. And, you know, you can get a red face when it's cold outside. But not just in one portion on your lower part of your face isn't generally going to just be red only. If it's just because of the cold. On the question of injury, is there evidence of injury? Is medical attention required? There's no medical attention. But, Your Honor, that there was a certain amount of injury is not necessary for this crime. Okay. And I think that's the key. We're not trying to say this was great bodily harm. But there was an injury. Aren't there additional witnesses who say they saw the victim be struck but couldn't identify in the line of the defendant? But he was identified by the victim and his one friend. But there are multiple witnesses beyond that who testified there was a striking, just that they couldn't identify the defendant as the assailant. Isn't that right? Well, I mean, there's three witnesses that testified from. And the third witness, the third friend of the victim, the second friend of the victim, saw the victim being struck. He just couldn't identify the defendant as the striker, right? Correct. Excuse me. I think we're making reference to Tim O'Brien. Yes. Who said he saw the man swing. He didn't say he saw any contact. That's correct. He did not say he saw contact. I think we're talking about somebody who didn't have his glasses on and admitted, I can't identify who that was, admittedly said, I saw him, looks like he swung at him. I'm not trying to overplay that, but that's still evidence that corroborates the victim's testimony and the second eyewitness testimony. And the trial court chose to believe that testimony. And what we have to look at here is whether it is so incredible, so unreasonable, so improbable that the defendant hit this victim. And I don't think you can look at a case that has three eyewitnesses in corroboration by a police officer. Two eyewitnesses. And the victim. The victim plus one witness. O'Brien wasn't a witness to the punch. The third eyewitness didn't testify as the striker. He testified something close to it, but he was there to testify at the event. I'm just asking you to be accurate. It was two eyewitnesses, the victim plus one of his friends, who testified that he was punched. A third eyewitness, friend of the victim, said, I don't know what happened. I didn't see it. I saw a swing. He's corroborative, right? He says, I saw a swing. That corroborates that some swing occurred. He just couldn't conclude that contact was made. Yes. But it's corroborative in nature. Yes. And then on the defense side, you have the defendant saying, no, I didn't do it, and two of his witnesses saying he didn't do it. Is that a correct statement? No, that's not correct, Your Honor. The defendant said, I didn't do it. He puts on a witness who, while he told the police about the other people in the car, failed to mention this particular witness, failed to mention that she was in the car. Niecy Evans apparently didn't tell the police or the state's attorney that this other witness, this Tatiana Williams, Tiana, was in the car. But at trial, she appears and she testifies and she corroborates the defendant's testimony. I think you have to question whether that's believable. The other witness, Niecy Evans, who was driving the car, did not testify that the defendant did not strike the victim. What she testified was. Did she testify that he did? No. No, he didn't. Okay. So you've got two witnesses on both sides, the victim plus a friend, saying it happened, and two witnesses on the other side, the defendant plus a friend saying it didn't, and then on each side a third witness that says, I don't really know what happened. I didn't see it. Well, I would disagree to this extent. The third witness that the state put on said, I did see it. He corroborated the events. He did see what? I did see something. He saw what looked like a swing. But he also. That's what he said. He also could not identify the defendant. Absolutely not. But this is not really, we're not talking about whether this was the defendant, because the defendant says he was there. He said, I started the altercation. Tell me again how this is beyond a reasonable doubt. I'm sorry? Tell me again how this is beyond a reasonable doubt. Because you have two, and if you, two eyewitnesses who saw the defendant punch the victim. Were these people impeached throughout these eyewitnesses that you referred to? Weren't they impeached throughout their testimony on a number of different aspects of this event? To the extent they were impeached, it was on small things like, did you see the man with the white towel before or after the red Cadillac? Okay. What about whether Mr. O'Brien talked to Mr. Bennett and Borski about this event? Their testimony, well, about the event. Is that a small thing? It's a collateral issue. It's their credibility, but it does not relate to their testimony about the incident. Were they impeached concerning that issue of talking to each other? Well, I mean, they each said they talked different times, but I don't know. No, no, no, no. Mr. Bennett said he never talked to either of the others. Okay. Is that right? Mr. Borski acknowledged talking only to Bennett. I don't remember how many times. Mr. O'Brien said all three of us talked. That's collateral? See, I think credibility is more than collateral. I agree with you that credibility is important, but I don't think that you talk about how many times did you talk to someone. You can say, I don't believe Bennett, that he didn't talk to him. You can say that, but that does not mean he's saying, you know what, we were standing out there, we were throwing snowballs, this guy had the nerve to get out of his car and yell at us, so I'm going to have him charged with a felony. I'm going to call the police right now, and the three of us, we're going to get together. You know, I think what you have to look at is the people's evidence. We have to get back to the people's evidence and say, is that so unreasonable? Is that so improbable? To find that it raises a reasonable doubt of the defendant's guilt, and it isn't. It clearly isn't. You've got eyewitness testimony, you have corroboration of the injury. Let's talk about that eyewitness testimony for just a moment. Mr. O'Brien is the person who needed glasses and wasn't wearing them. Correct. He's the person who says, I saw a swing. Correct. Mr. Borski says, I saw him hit him. Mr. Borski is also, we're talking about powers of observation, is also the person who saw the car which is in the Black Pontiac, which is in the middle of the intersection, 150 feet away. Does that talk at all about credibility and or the powers of observation? To a certain extent, but no, I would disagree with you there, because to me the fact where the car was parked, where they saw the defendant get out of, you have to think that. No, it's not where the car was parked. It's what he said. You want to find, to affirm this finding based on what Mr. Borski has said, and he has said a number of inconsistent things. But you have to look at what he's talking about, Your Honor. When he's talking about the crime, this is an event that you would remember. This is an event that you wouldn't, if you saw somebody punch someone, you would know it. Whereas where the car was parked. And you probably talk about it to your friends. He may have talked about it. In fact, I think he did say he did. But even if he did, it doesn't mean he was lying about it. In fact, the fact that there's. Well, let's go over Mr. Bennett's testimony for a minute. He said the defendant put his hand into his pocket, started to put his hand into his pocket, and he pushed away the defendant's hand. He said the defendant punched him, and he said that he was knocked to the ground. And he later denied that he was knocked to the ground, and he was later found to be incredible on whether or not the defendant put his hand in or near his pocket. So you're telling us we should believe him on one thing but not the other two. Is that correct? You have to take all of the evidence together. And what I will say is in terms of him being knocked down, the testimony that came out, Bennett consistently said, I was not knocked down. I walked across the street and sat down. But when the officer testified that that's what Bennett said, he said, I put that down because my sergeant who was there told me that. So we now have a chain of. So the sergeants are telling each other what happened. Neither of whom were there. I mean, these cops weren't there. But they're telling each other what happened. Well, I'm just saying, we have to look at the testimony. We have to look at the testimony that came out. And you can take it all together, and you have to look at the credibility. The court was there looking at the credibility. And I don't think you're giving enough credit to the fact that the witness has testified to the same story with minor inconsistencies. And the defendant is basically, his testimony is just an, I didn't do anything. I was good. And saying that he stood. Well, actually, he said he got out of the car and yelled at these kids who threw snowballs at him. Okay, yelled at him. He certainly didn't admit to punching the victim. Instead, he said, I stayed within one to two feet of the car. Then I find that it's incredible that he's actually saying, I stood here. Wait a minute. Counsel, let me just ask you something. You've got a bunch of high school kids, 20 to 2. And you're finding it incredible that the two who are yelling about the snowballs don't want to stay close to the car so they can get away fast when the 20 come after them? I don't think it's incredible they were yelling at the snowballs. Do you think it's incredible that they stayed close to the car so they could get away real fast? Yeah, I think it's incredible that they actually took the time to pull over and get out of the car but stay close to the car. But the bottom line is it doesn't matter what I think. It matters what the trial court thinks and whether it's reasonable. And we have to go back to that. He clearly stated those elements were proven beyond reasonable doubt. He looked at all the evidence. He saw all the witnesses testify. And he believed that the defendants struck the victim. I think the way you're looking at it, it's not giving his findings any credibility. You're basically saying, you know what, you didn't find him credible on one issue, so you can't possibly find him credible on anything else. And the cases say even if you find that a witness lies about a material point, you don't have to discount his entire testimony in belief portions of it. I think we have to keep looking at that. And I would also like to point out that I think the whole thing about this false act, the whole thing about the charging instrument, it's red herring. It's red herring because regardless of what the court said, what we're looking at is the charges that were brought, whether they were proven. And the court found they were proven. And according to you, you need not prove up injury. That's what you're saying. Well, it's a public way. You have to prove. Yeah, it's aggravated behavior in a public way. And you need not prove injury. Well, I don't think there necessarily has to be a visible injury. You have to prove there wasn't a striking. You have to prove that he was hit. You don't have to prove that he needed to go to the hospital, that he was bleeding, that he had a cut, whatever. For those reasons, I would ask this court to affirm defendant's conviction. Thank you. Thank you. Thank you. You need to prove injury. There are two ways to prove. It is aggravated because it's on a public way. And there's two theories for battery in this case. It was not charged under the insulting or provoking conduct subsection. It was charged under the bodily harm. Now, it doesn't have to send you to the hospital. But, yes, they need to prove injury. And they didn't. And I think I'd like to address Officer Clancy's testimony since this is supposedly the corroboration. As Justice Stallone, I think we were trying to hone in on exactly what Officer Clancy said. And ASA Sexton said, do you recall stating or seeing that he had a bruise? And the witness responded, he had a redness on his face where he said he got hit. Did you write that in your report? No. And, again, I think, I mean, really this is an assent to the prosecution's representation. Did you note injuries? You noted injuries, correct? Correct. And that was on the right bottom right portion of his face, right? Right. So this is not a witness independently recollecting an injury on the bottom right portion of his face. This is a witness who is testifying in agreement with the representation that the prosecution is making. You know, with respect to Missy Evans, it's interesting that the state relies on her testimony in such a way because she's a rebuttal witness. I think this displays the quality of the complainant's account in the state's case in chief. Also, you know, with respect to the substance of her testimony, it's truly awash. I mean, on the material issue of whether Bell punched Bennett, you know, she didn't say that he didn't, but she didn't say he did. And, you know, what she did say is that Bell and his friends had words with the complainants, who threw snowballs at them, which corroborate Bell's account, contradicts the state's account. And then, you know, finally, counsel said a couple of things. Apparently the defendant isn't credible because he won't admit he punched the victim. I mean, is that the standard of credibility when an defendant defends himself and testifies to the facts of the offense or lack thereof from his perspective? Counsel also said it's a collateral issue, the complainant's credibility. When is the complainant's credibility ever a collateral issue? You know, I think although obviously the judge entered a finding on the battery charge, which is why we're here, his findings don't really support that verdict. And I think looking at the nature of those findings, you know, it's apparent. His finding, you know, there's a lot of talk about deference.  And that's his finding. And it is absolutely this court's responsibility to look at the evidence, to review the record, and find that if the evidence doesn't remove all doubt of guilt, to reverse. And we're asking this court to do so. Counsel, isn't the trial court in the superior position to observe the manner and demeanor of the witnesses and assess their credibility, and you're asking us then to reassess the credibility of the witnesses without the benefit the trial judge had. Is that right? No, I'm not asking you to reassess. The judge found them incredible. I'm asking you to do what apparently was. No, let's more precisely reflect what the court said. The court found some portions of the testimony of many of the witnesses incredible and some portions credible, which is within the province of the trial court. Isn't that right? Absolutely. You know, yes, it's of course within his obligation and the scope of his discretion to accept some and not another, but there really becomes a point where the impeachment and the incredible nature of the contents testimony, it reaches a tipping point where without any other independent, reliable evidence to prove that what they're saying is true. Well, the judge also, when it makes credibility determinations, also determines how much weight to give to that individual witness's testimony. Isn't that right? That's absolutely true.  And yielded a decision where he specifically said Mr. Bennett was struck. Isn't that right? But it's likely absurd that no one was struck. Yes. But didn't he say Mr. Bennett was struck? Isn't that what he concluded? Well, you know, what he concluded was that the only prudent thing that happened is when he was struck, and I think it's a rather, right, abstract articulation of it. When he was struck, no one retaliated. But again, it doesn't point to why he believes, despite his credibility findings, that Bennett was nonetheless struck. What was it? I mean, he doesn't articulate. He doesn't point to any evidence. He doesn't explain why, despite his findings at the complainant's account. No, he doesn't need to. No, no. Or is he required? Of course. No, he doesn't. But under Your Honor's articulation, then we would never have a reasonable doubt, argument on appeal that deals with the credibility of the witnesses. I would reject that assertion. I mean, the first district in People v. Arcos back in 1996, they reversed a murder conviction in a case in which the judge found the state's witnesses to be completely incredible. So it's somewhat synonymous with this. And they found that there must be independent corroboration. If you're going to rely on the testimony of a witness or, in that case, a prior and consistent statement, grand jury testimony, a custodial statement of a witness to prove an offense, and yet nonetheless remark and lament their unreliability, their incredibility, then there has to be some other corroborating evidence to prove the state's case. I mean, what we're talking about here back and forth is this sort of evidence soup. But that's not the way trials are supposed to work. Trials are supposed to work where the state presents its best case and produces an abiding conviction of guilt. And that's what's missing in this case. And therefore, we request that this Court reverse Winton Bell's aggravated battery conviction. Thank you. Thank you. Can I? Go ahead. Ms. Lavins. Ms. Lavins. Thank you, Ms. Hunter. What is the value of making a notation that James Bennett's father is a police officer? I don't think there's any value. In fact, there is no value because the trial court specifically stated in his ruling, that doesn't matter. It has no effect on my ruling. So it doesn't matter. Did it have an impact on the police activity in this case? Your Honor, we don't even know. Nobody ever actually said that his father is a police sergeant, but nobody denied it. It's on one of the reports, one of the early reports. It's in the case report. It's in the case report. Okay. Okay. Even so, regardless of the investigation, if they put ten times more into an investigation because of that, if the proof is there to prove someone guilty beyond a reasonable doubt, then why is it? Okay. You have four police officers and one sergeant assigned to this case and 20 kids, and yet there are only three witnesses, one of whom didn't see what happened. Why not 18 witnesses? They were all standing around? Exactly. If they wanted to, they could have. If this was a conspiracy, that's exactly what they could have done. I'm not saying it's a conspiracy. I'm just asking about the level of police activity in this case. You're telling me that there's proof beyond a reasonable doubt, and I keep going back to the fact that there are two witnesses. One of them is the victim. One of them is a friend of his, and they're both saying, among other things in which they were found to be incredible, that this defendant punched him. And I'm asking why, with all those cops around, they didn't ask more kids to come as witnesses or what happened or get more statements. I can't answer why they did what they did, but the fact that there's more policemen or less policemen, it shouldn't have any bearing on the issue here. The issue is at trial whether the evidence proved him guilty. And while counsel said the last thing that the court said is it's likely absurd that the defendant didn't punch anyone, that's not the last thing he said. That was what he said before he said the elements of aggravated battery. And he specifically said that the credit from, like, the indictment, that all of those elements occurred here. They were all proven. It's on page W49. What about Ms. Turner's statement that the charging document required injury? I don't believe it did, Your Honor. I mean, I don't know where that comes from, frankly. I don't know why that is. Okay, so to sum up, you have two witnesses for the victim and a friend and for the defense, the defendant and a friend, and neither, they don't agree. One says there was a punch, one side says there was a punch, and one side says there wasn't. How is that evidence that there was a punch? I don't think the witnesses disagreed. Well, the defense witnesses obviously disagreed with the victim witnesses. Yes. How is that evidence that there was a punch? How is it evidence that there was a punch? I'm just asking the question. You've got the victim saying he punched me and the defendant saying I didn't. How is that corroborated evidence that there was a punch? I think that's what the trial court does. The trial court decides. I'm going to look at if I have, you could have ten witnesses on one side, you might not believe any of them, against one witness on the other side. That's why the court is there to make that credibility determination. Did he find the defendant incredible in any point of his testimony? Yes. He found him incredible about the fact in his testimony that he didn't punch the victim. No. That he found incredible. Not exactly. In his finding, you mean. In his finding. Not exactly. He didn't express the same language as he did about the statements. Right. He said basically the same thing. Instead of saying it's absurd, it's likely absurd, whether he may have used some different words, he still, he doesn't have to explain exactly why he found what he found, but he did give a pretty lengthy explanation. He said, this is what I do believe occurred. This is what I don't believe occurred. It has to be reasonable. It has to be probable and within the scope of human experience. I would say that it is, Your Honor. And I wonder if what Judge Claps was, the way he worded it, could easily also be interpreted to say, well, if there was a punch, it's lucky that there weren't 20 more, that there wasn't a melee of young men, you know, bashing each other around on that street corner. It's not. He really didn't say, I find that there was a punch. What he said was, it's incredible to believe that there weren't more. I don't recall the exact wording, but I can actually get that. He said it was absurd. No, it wasn't. What he said at the very end of his ruling, on count one aggravated battery, in that without justification, intentionally and knowingly caused bodily harm to James Bennett, in that he struck him about the head while they were on or about a public way, to wit, South Point Avenue. The State's evidence clearly proves, beyond a reasonable doubt, that all of those elements did in fact occur, however minor the injury may have been. And then he finds the defendant guilty. So I think he's pretty clear about it, whether he at one point may have said something that sounds a little bit, I think you can interpret it as being not so strong. He clearly made that finding. Whatever he said before, he made it very clear at the end, before he found the defendant guilty. Thank you. Thank you.